## Pomeroy Salt Association Company v. J. B. Speed & Company, et al.

(Decided December 16, 1924.)

### Appeal from Jefferson Circuit Court (Common Pleas, Third Division).

1.  **Pleading—Allegation of Facts in Legal Effect Constituting Charge of Conspiracy is Sufficient.**—A petition may effectively charge a conspiracy without a direct charge thereof, if facts alleged in their legal effect constitute such charge.

2. Conspiracy—Petition in Action by Corporation Held Sufficient to State Cause of Action for Conspiracy to Mismanage.—Petition in corporation's action against another corporation and others who were to take over the management of plaintiff corporation under a reorganization plan held insufficient to state a cause of action for conspiracy to mismanage and injure plaintiff corporation without fulfillment of contract.

3. Pleading—Pleadings Construed Most Strongly Against Pleader.—Pleadings are construed most strongly against pleader.

·· · WOODWARD & WARFIELD and JOHN MARSHALL, JR., for appellant.

ALEX. P. HUMPHREY, EDWARD P. HUMPHREY and HUMPHREY, CRAWFORD & MIDDLETON for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—Affirming.

Appellant, Pomeroy Salt Association Company, an Ohio corporation, by its petition herein sought to recover $100,000.00 from the appellees, J. B. Speed & Company, a Kentucky corporation, and W. S. Speed, F. M. Sackett, Henry S. Gray and Paul H. Creel. A demurrer was sustained to the petition in so far as it undertook to state a cause of action against J. B. Speed & Company, W. S. Speed and F. M. Sackett and this appeal is from the judgment of the trial court dismissing the petition as to them. Consequently the appeal presents for our settlement the single question as to whether or not the petition stated a cause of action against the appellees.

The question centers around an alleged contract made on the 25th day of May, 1921. It appears from the petition that appellant is an Ohio corporation and that prior to the date above mentioned it had been engaged in the manufacture and sale of salt, owning and operating salt wells and a manufacturing plant at Pomeroy, Ohio. It appears that its affairs were managed by a board of directors of five members, which in turn selected its officers. H. P. Collins, Bell Anderson, Guy W. Mallon, Frederick Hartwig and Mrs. C. C. Cobb were members of its board of directors. Frederick Hartwig was its president and Mrs. C. C. Cobb its secretary and treasurer. From the petition we gather that for some time prior to the date above named the active management and control of its business was in the hands of Mrs. Cobb, its secretary-treasurer, due to the fact that its president was unable because of other business engagements to devote much of his time to its affairs.

From the allegations of the petition it would seem that for personal reasons Mrs. Cobb desired to be relieved of its management. The destruction by fire of a part of its plant had imposed upon appellant corporation need for additional capital. That state of facts is pleaded by appellant as constituting a desire on its part to procure a new management and additional capital for the prosecution of its business.

The petition discloses that appellee corporation was organized under the laws of Kentucky and was engaged in selling salt and other commodities at wholesale; that appellees, Speed and Sackett, were officers and directors of it; that for some time prior to the date mentioned appellee corporation had been trying to procure the exclusive sales agency for the salt produced in the Pomeroy Bend section of Ohio for the states of Kentucky and Tennessee, but had been unable to do so because appellant corporation had its own sales agency through which it marketed its salt; and that appellee corporation, prior to that time, had not engaged in the manufacture of salt, but desired to do so.

The petition alleged that growing out of the needs of the parties, respectively, as above set out, a contract was entered into on the 25th day of May, 1921, by Mrs. C. C. Cobb, who, according to the allegations of the petition, was acting for all of the stockholders of appellant corporation on the one hand, and the appellee corporation on the other, acting through appellees, W. S. Speed, its president, and Fred M. Sackett, its vice-president, and one Henry S. Gray, its secretary and treasurer. According to the allegations of the petition the contract was that the common stock of appellant corporation should be increased to $100,000.00 and should be purchased by appellee corporation. $150,000.00 of 7% preferred stock should be issued and distributed to the stockholders of appellant corporation *pro rata* according to and in exchange for their holdings of common stock. Bonds should be issued in amount not to exceed $100,000.00 to supply funds to meet current expenses and indebtedness and working capital. And appellee corporation should immediately assume control of and through its officers and employees manage the business of appellant corporation. The petition charged that in July, following the making of the contract, the board of directors of appellant corporation met and all of them, with the ex-

ception of Mrs. Cobb, resigned. That there were elected to the vacancies thus caused four new directors, two of whom were Henry S. Gray and Paul H. Creel, Gray at that time being a director and the secretary-treasurer of appellee corporation, and Creel, though not one of its directors, the manager of its salt department. The other two persons elected to the board of directors are not alleged by the petition to have had any connection with or any interest in the appellee corporation, but the petition does allege that the four of them were elected at the direction and dictation of appellee corporation and that the election of these four men to appellant corporation's board of directors was done to carry out the agreement made on May 25th, and that by electing them its directors appellant corporation turned over to appellee corporation the management and control of its business affairs and appellee corporation assumed such management and control. The petition discloses that Gray was made president and Creel manager of appellant corporation, and charges their negligent and careless management and handling of appellant's business and properties, with a consequent damage to it in the sum of $100,000.00. It charges that in all the acts of omission and commission constituting negligence, Gray and Creel were the agents of appellee corporation and were acting for it in carrying out its part of the contract by which it agreed to assume the management and control of appellant corporation. The petition discloses that in December following, appellee corporation gave notice that it would not receive and pay for the $100,000.00 of common stock of appellant corporation and thereby repudiated the contract, but that Gray and Creel continued to serve as president of appellant corporation until about April 1, 1922, when they resigned and that thereupon the original stockholders of appellant corporation took unto themselves again the management and control of their corporation. The various acts of omission and commission constituting the carelessness and negligence from which appellant corporation suffered damages were pleaded in the petition, but we deem it unnecessary to detail them here. Appellant insists that the petition as amended, when tested by demurrer, states a cause of action against appellees, because appellee corporation under the contract agreed to manage the business of appellant corporation and did so by delegating the duty to Gray and Creel; that Gray and Creel performed that duty negli-

gently, to its damage; that thereby appellee corporation
wilfully injured appellant corporation and that appellee
corporation and appellees, Speed and Sackett, together
with Gray and Creel, conspired to injure appellant cor-
poration for the benefit of appellee corporation, the dam-
ages being the result of acts done pursuant to the con-
spiracy.

Ordinarily a petition which seeks to recover from a
number of persons for acts done by part of them upon
the theory that the acts done were pursuant to and for
the purpose of carrying out a conspiracy specifically
charges that such was the case. The petition in this
case nowhere alleges the formation of a conspiracy
among the parties sought to be charged therewith, but
appellant insists that the facts pleaded by it amount to
the same thing. We will suggest that a great deal of the
court's time might have been saved by directly charging
in the petition the formation of the conspiracy and that
the acts by some of the conspirators for the benefit of
all were done pursuant to and in furtherance of the con-
spiracy. If so pleaded it would have been a great deal
easier for the court to determine whether or not the peti-
tion states a cause of action than to follow through the
maze of facts set out in the petition to ascertain whether
or not the legal effect of the facts pleaded when con-
sidered together are sufficient to charge appellees, J. B.
Speed & Company, W. S. Speed and F. M. Sackett, with
having conspired with Gray and Creel to exploit appel-
lant corporation and that the purpose of the conspiracy
was consummated by the acts of Gray and Creel. It
must be conceded, however, that the latter method is
effective if the facts alleged in their legal effect constitute
such a charge. The fatal defect in the petition as drawn,
as we understand it, is the conclusive statement in the
petition that the election of the board of directors in
July, 1921, was the fulfillment of appellee corporation's
undertaking to assume management and control of
appellant corporation and its business under the con-
tract of May 25, 1921. The contract, as alleged in the
petition, provided that the common stock of the corpora-
tion should be increased to $100,000.00 and that it should
be purchased by appellee corporation. That $150,000.00
of 7% preferred stock should be issued by appellant cor-
poration and distributed among its then common stock-
holders *pro rata* according to their stock holdings in lieu
of their common stock surrendered and $100,000.00 of

bonds should be issued, the proceeds of which would supply capital to meet current expenses and working capital. Those were the terms of the contract under which appellant alleges the management and control of appellant corporation and its business should be surrendered by it to and be assumed by appellee corporation. Having made that contract, how could its terms be carried out so as to surrender to appellee corporation and have assumed by it the management and control of appellant corporation? It seems to us that the contract as pleaded clearly provides the method by which that was to be done. The then holders of the common stock of appellant corporation were required to surrender their holdings of stock in lieu of which they were to be given the $150,000.00 issue of 7% preferred stock. The common stock from whatever amount then existed, which does not appear in the petition, should be increased to $100,000.00 and be delivered to appellee corporation. The issual of, delivery to and acceptance by appellee corporation of the $100,000.00 of common stock of appellant corporation, its entire common stock, would effect the transfer of the management and control of appellant corporation to appellee. Owning its common capital stock it could elect the board of directors of appellant and thereby take over its management. That is what the contract pleaded provided should be done. The petition alleges that the board of directors of appellant corporation elected in July, 1921, authorized the increase of the common capital stock to $100,000.00 and authorized the issue of $100,000.00 of first mortgage bonds; but it does not allege that the $100,000.00 of common stock was ever purchased by or delivered to appellee corporation, or that the stockholders of appellant corporation ever surrendered their holdings of its common stock, or that there was ever issued or delivered to them in lieu thereof the $150,000.00 of 7% preferred stock. In other words, the allegations of the petition do not disclose that the plan for the reorganization of appellant corporation and the transfer of the management and control of its business affairs provided for in the contract pleaded was ever carried into effect. The petition charges that the contract by which appellee corporation agreed to assume the management and control of the business of appellant corporation was carried into effect by the meeting of the stockholders and directors of appellant corporation in July, 1921, at which a new board of directors was elected.

Construing those allegations, however, in connection with the allegations of the petition as to what the contract was and how the reorganization of appellant corporation should be effected, we must conclude that the statements of the petition must give way to the terms of the contract pleaded, leaving appellant's petition ineffective in so far as it charges that by what was done the appellee corporation took over the management and control of the business of appellant corporation. Appellant pleaded the terms of the contract and the plan thereunder whereby appellee corporation agreed to assume the management and control of appellant corporation. It then pleaded that appellee corporation performed its agreement to and did take over the management and control of appellant corporation under the contract. But the petition specifies how that was done. Such specifications read in connection with the plan provided in the contract pleaded leave us no alternative. We must conclude that the statements of the petition that the facts alleged constituted the taking over by appellee corporation of the management and control of appellant corporation under the contract pleaded is merely an unwarranted conclusion of the pleader. Appellant corporation pleaded that appellee corporation took over the management of its business by being represented at the meeting of the directors in July, 1921, by certain of its officers, at the instance and direction of whom appellant's board of directors one at a time resigned, the vacancies being filled by the election of persons selected by appellee corporation, two of whom were officers of appellee corporation, and that all the acts of omission and commission of the directors and officers of appellant corporation thereafter which resulted in injury to appellant corporation are chargeable to appellee corportion because by dictating who should be elected directors of appellant corporation it assumed the management and control of appellant corporation's business affairs as it agreed to do in the contract of May 25, 1921. Those statements of the petition read in connection with the terms of the contract pleaded by which it is alleged appellee corporation agreed to assume the management and control of appellant corporation must be treated by us as are statements of a pleading inconsistent with an exhibit filed with, referred to and made a part of a petition. The plan whereby the one corporation should take over the management and control of the other was

provided for in the contract.   The acts subsequently done pleaded by appellant as constituting compliance with the contract when read in connection with the contract itself disclose that they could not have been understood by either party as the performance of the contract and are not sufficient to constitute a cause of action based upon the contract or for torts growing out of same.   No transfer, so far as the petition shows, of the $100,000.00 of appellant's common stock was ever made to appellee corporation.   The election of the board of directors in July was not made by appellee corporation as the holder of the common stock of appellant.   The original holders of its capital stock still held the same.   As such they yet held and controlled the source of power for the election of a board of directors.   Three and a majority of the directors so elected are not shown by the petition to have had any connection with or to have been subject to any influence by appellee corporation.

The petition discloses that in December, 1921, appellee corporation notified appellant that it would not purchase its $100,000.00 of capital stock.   In any event there was no further room after that occurred for appellant corporation to be deceived.   Appellee corporation then expressly repudiated the contract of May 25, 1921. In no event could appellee corporation be held liable for any of the acts of Gray and Creel after that date.   The alleged tortious acts of Gray and Creel from which resulted the damage to appellant were done between July 19, 1921, and April 1, 1922, but nothing in the petition fixes the time of the commission of same as before or after the date in December, 1921, when appellee corporation expressly repudiated the contract.   The petition does not charge that the damage was done at a time when in any event appellee corporation would have been liable for it.   If the stockholders of appellant corporation could have assumed that appellee corporation took over the management of the business of appellant corporation pursuant to the contract of May 25, 1921, by their election of the directors suggested by appellee corporation at the meeting July 19, 1921, the express repudiation of the contract of May 25th, in December following by appellee corporation gave them express notice that it no longer regarded itself bound by that contract.   From that time on they certainly had no right to assume that its board of directors and officers engaged in managing and conducting its business were doing so as the agents of appel-

lee corporation. So far as the petition discloses all the alleged tortious acts of Gray and Creel for which appellant seeks to make appellees liable may have been done after appellee corporation repudiated the contract.

Construing the allegations of the petition strongest against the pleader, as we must, we are clearly of the opinion that the facts alleged do not constitute a cause of action against appellees. Hence, the judgment herein is affirmed.